IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY JEAN HOOKS, | : | |
| Plaintiff, | : | |
| v. | : | CA 11-00243-C |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 20 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.") & 21 (order referring case to the Magistrate Judge).) Upon consideration of the administrative record ("R.") (Doc. 14), the plaintiff's brief (Doc. 15), and the Commissioner's brief (Doc. 16),[1] it is determined that the Commissioner's decision denying plaintiff benefits should be **reversed and remanded** for further proceedings not inconsistent with this decision.[2]

---

[1] The plaintiff filed an unopposed motion to waive oral argument (Doc. 19), which the Court granted (Doc. 20).

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment

**Relevant Background**

The plaintiff's application for SSI (R. 139-144), filed on May 18, 2006, was initially denied on July 14, 2006 (*see* R. 88-94). The plaintiff filed a timely request for hearing, and hearings were conducted before an Administrative Law Judge on January 23, 2008 (*see* R. 62-77), July 2, 2008 (*see* R. 49-61), and November 3, 2008 (*see* R. 33-48). On November 24, 2008, the ALJ issued a decision (R. 9-20) denying the plaintiff benefits—finding the plaintiff was not disabled at the fifth step of the sequential evaluation process—and the plaintiff sought review from the Appeals Council. The Appeals Council denied the plaintiff's request for review of the ALJ's decision on April 4, 2011 (*see* R. 1-3)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on May 12, 2011 (*see* Doc. 1).

**Standard of Review**

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the

---

entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."  *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## **Discussion**

On appeal to this Court, the plaintiff asserts two separate claims:

1. The Commissioner's decision should be reversed because the ALJ erred in finding the plaintiff capable of performing her past relevant work as a retail sales clerk because such work directly conflicts with the ALJ's residual functional capacity determination (the "RFC")[3]; and

2. The Commissioner's decision should be reversed because the ALJ erred in relying on the VE's testimony as it directly conflicts with the Dictionary of Occupational Title (the "DOT").

The Court will address these in turn.

---

[3] The ALJ is responsible for determining a claimant's RFC—a tenet of Social Security law, *see* 20 C.F.R. § 416.946(c), that this Court has never taken issue with, *see, e.g., Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain," 20 C.F.R. § 416.945(a)(3), and in determining same, the ALJ must consider a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of [ ] section [416.945]." 20 C.F.R. § 416.945(a)(4). To allow this Court to determine "whether substantial evidence support[s] the ALJ's findings[,]" it is imperative that the ALJ link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work. *Hanna v. Astrue*, 395 Fed. App'x 634, 635-36 (11th Cir. Sept. 9, 2010) (per curiam); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *cf. Dixon v. Astrue*, 312 Fed. App'x 226, 229 (11th Cir. Feb. 13, 2009) (per curiam) (after noting,"'[w]hile we may not supply a reasoned basis for [an] agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[,]'" vacating a district court's decision to affirm the ALJ where "the ALJ's path [was] not reasonably discernible") (quoting *Zahnd v. Secretary, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

A.    <u>Pertinent ALJ findings.</u>[4]

4.    **The claimant has the residual functional capacity to perform the light to medium functions set forth in Exhibit 7F at 4-7, except for a limitation to occasional fine manipulation and occasional overhead reaching with the right arm. She is limited by side effects of medications to understand, remember and carry out only simple, 1-2 step instructions.**

.  .  .

5.    **Based on vocational expert testimony, the claimant is capable of performing her past relevant work as a retail sales clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.**

In comparing the claimant's residual functional capacity with the demands of the claimant's past relevant work as a retail sales clerk, the undersigned finds that the claimant is able to perform it as generally performed. A description is found at DOT #290.477-014. It is a light, semi-skilled job that requires frequent reaching, handling, fingering, talking and hearing; and occasional stooping, crouching, near and far acuity and color vision. She performed the job within the past 15 years, for long enough to know how to do it, and at the SGA level according to her own admission in the work forms.

The vocational expert also testified that the claimant can perform work as a janitor of which there are 1.5 million in the national economy. The vocational expert testified that his testimony was consistent with the Dictionary of Occupational Titles.

B.    The ALJ's RFC assessment is not consistent with his determination that <u>the plaintiff can perform her past relevant work.</u>

The ALJ found that the plaintiff can perform her past relevant work because "the demands" of such work, "as generally performed," are consistent with the RFC determination. (R. 19.) This conclusion was based primarily on the testimony of the

---

[4]    The ALJ's decision appears at R. 9-20.

vocational expert (the "VE") at the hearing conducted on November 3, 2008 (*see* R. 35-47), where the ALJ first asked the VE to classify the plaintiff's past relevant work:

> Q. Okay. Ms. Hooks has mentioned that at one point she did some work in the retail industry. And I'm wondering whether her description of that work that she did matches up with any kind of work that appears in the Dictionary of Occupational Titles[?]
>
> A. Yes sir, I believe so.
>
> Q. What would that be?
>
> A. I believe it would be classified as a sales clerk and retail trade.
>
> Q. Okay. And do you know at what exertional that kind of work is done?
>
> A. Yes sir. It is classified as being light in exertional level and semi-skilled with SVP level of 3.

(R. 39.)[5] The ALJ then asked the VE to take the RFC offered by Dr. Yager and impose the following additional limitations: (1) occasional fine manipulation; (2) occasional overhead reaching with the right arm, and (3) the ability "to understand, remember, and carry out only simple one and two step instructions and job requirements[; t]hat is, those that are associated with unskilled . . . work" (R. 40) and, considering all that, identify whether any jobs existed in the regional or national economy (R. 40-41). In response,

---

[5] The acronym "SVP"—as used above—stands for Specific Vocational Preparation, which is a component of the Worker Characteristics information found in the DOT. As defined in Appendix C of the DOT, SVP is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. SVP Level 3 is over one month up to and including three months.

the VE, after confirming his understanding as to what the fingering and the fine manipulation requirements were for a sales clerk, stated:

> A.  It would appear that the sales person for women's appeal would generally fit that criteria.
>
> Q.  Okay.  Now, would the limitation to the one and two step [instructions] interfere at all -- or be inconsistent at all with the SVP of 3 or does that match up?
>
> A.  It might very well be inconsistent.  I think there's probably some two and three step -- as far as selling women's apparel, you know, taking customers['] cash, taking credit cards, feeling out the end of day register -- things of that nature.

(R. 41.)

The plaintiff argues that the ALJ's "own description of the job of retail sales clerk" belies "what is permitted in his RFC."  (Doc. 15 at 6.)  Specifically, the plaintiff contends that the ALJ

> stated Ms. Hooks is limited to "occasional fine manipulation and occasional overhead reaching with the right arm[.]" [R. 14.]  This certainly doesn't comport the with duties of a retail sales clerk[,] which require frequent reaching, handling, and fingering.  Moreover, the ALJ limited Ms. Hooks to understanding, remembering and carrying out only simple 1-2 step instructions[.]  [R. 14.]  Ms. Hooks' previous position of retail sales clerk has a SVP level of 3 and reasoning level of 3[,][6] indicating the mental job requirements are semi-skilled[,] which surpass the ALJ's RFC

---

[6]  The position of Sales Clerk (retail trade) requires a Reasoning Level of 3.  *See* DOT, Job Descriptions, *available at* http://www. occupationalinfo.org/29/290477014.html (last visited Apr. 3, 2011).  And a Reasoning Level of 3 is defined in Appendix C of the DOT as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  *See also Stern v. Commissioner of Soc. Sec.*, No. 1:10 CV 1961, 2011 WL 6780889, at *7 (N.D. Ohio Nov. 23, 2011) (discussing same), *report & recommendation adopted*, 2011 WL 6780883 (N.D. Ohio Dec. 27, 2011).

>    requiring Ms. Hooks to be limited to simple 1-2 step instructions or unskilled work.

(*Id.* at 6-7 (footnotes in brief omitted; footnote above added); *compare* R. 14 (stating, in part, that the plaintiff has the RFC to perform "the light to medium functions set forth in [the March 12, 2008 physical medical source opinion provided by Dr. Yager], except for a limitation to the **occasional** fine manipulation and **occasional** overhead reaching with the right arm" and—due to "side effects of medications"—"to understand, remember and carry out only **simple, 1-2 step** instructions"), *with* R. 19 (stating that her past relevant work, as described in the DOT, is "**semi-skilled**" and "requires **frequent** reaching, handling, fingering, talking and hearing; and occasional stooping, crouching, near and far acuity and color vision") (emphasis added).)

The plaintiff further contends that, based on the VE's testimony set forth by the Court above, "the ALJ's reliance on the VE's testimony is flawed as the VE indicated Ms. Hooks would be incapable of performing her past relevant work." (*Id.* at 7.)

At the hearing, the ALJ asked the VE whether the RFC's limitation that the plaintiff be constrained to "simple, 1-2 step instructions"—which he described as "those that are associated with . . . the unskilled level of work"—interfered with or was inconsistent with the SVP associated with her past relevant work, identified as a retail sales clerk. The VE's response, that there may be some inconsistency, seems to turn on his understanding that the position of a retail sales clerk may generally involve "some two and three step" instructions. Thus, it is important to clarify, initially, that "[t]he

DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the general educational requirements (GED), particularly **the GED reasoning level, pertains to the complexity of a job**." *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006) (emphasis added); *see also Smith v. Astrue*, No. 5:06-cv-373-Oc-10GRJ, 2008 WL 879380, at *8 n.25 (M.D. Fla. Mar. 28, 2008) ("At the hearing, the VE mentioned the SVP level, but not the reasoning level. The SVP level in a DOT listing does not address whether a job entails only simple job instructions. Instead the [GED] requirements in the DOT listing (such as reasoning) are more pertinent to determining the complexity of a job.") (citing *Estrada*).[7]

While the ALJ's question may blur the distinction between SVP and GED, his RFC determination—the requirement that plaintiff is limited to "understand, remember and

---

[7] In response to the Commissioner's motion for reconsideration, asserting that the court "clearly erred" by determining "that the VE's testimony that Plaintiff, who the ALJ limited to performing 'simple, repetitive tasks,' could return to her past work as a telemarketer conflicted with the reasoning level of three provided by the DOT," the court in *Leonard v. Astrue*, 487 F. Supp. 2d 1333 (M.D. Fla. 2007), noted that

> while [the Commissioner] contends that the GED's reasoning level merely relates to the educational level needed to perform a job, several courts have found that the GED's reasoning level does, in fact, pertain to the work requirements of a job and thus, is relevant where an ALJ limits a plaintiff to the performance of simple and/or repetitive tasks[,]

*id.* at 1342-43 (citing cases); *compare Briggs v. Astrue*, Civil No. 08-05-B-W, 2008 WL 4849332, at *3 n.3 (D. Me. Nov. 6, 2008) ("the skill level of work bears on SVP, not on GED reasoning level") (citing Social Security Ruling ("SSR") 00-4p), *with Hall v. Barnhart*, No. 03-299-P-C, 2004 WL 1896969, at *3 (D. Me. Aug. 25, 2004) ("whether a job is skilled or unskilled does not speak directly to the question of whether it entails simple, repetitive tasks, which seemingly is more squarely addressed by the GED ratings").

carry out only simple, 1-2 step instructions"—is focused on GED, which "pertains to the complexity of a job"; that is, whether it "entails simple tasks[.]" *Estrada*, 417 F. Supp. 2d at 1302 n.3.

It does not appear that the Eleventh Circuit has determined whether a GED Reasoning Level of 3 under the DOT—that associated with the plaintiff's past relevant work—is consistent with a limitation to understand, remember and carry out only simple, 1-2 step instructions. But district courts in this Circuit that have addressed the issue appear to uniformly hold that it is not consistent. *See Estrada*, 417 F. Supp. 2d at 1303-04; *Leonard*, 487 F. Supp. 2d at 1342-43; *Smith*, 2008 WL 879380, at *8 ("Here, the ALJ concluded that Plaintiff could perform simple, low stress work, with one, two or three step instructions and that Plaintiff was capable of understanding, remembering and carrying out simple job instructions. There is an **apparent conflict between** the limitation in Plaintiff's RFC to simple, low stress work, with **one, two or three step instructions and the level-three reasoning required to perform Plaintiff's past work** as a security guard. Because of this conflict the ALJ's finding that Plaintiff can perform his past relevant work as generally performed in the national economy is not supported by the substantial evidence and, therefore, must be reversed.") (emphasis added).[8]

---

[8] There is, however, a recognized split nationally regarding this issue. *Compare Simpson v. Astrue*, Civil Action No. 10–2874, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011) ("some courts have found a conflict between a VE's testimony that a claimant can perform a job with a reasoning level of 3 and an RFC limiting that claimant to "simple and routine work tasks") (citing cases) *and Gustafson v. Astrue*, Civil No. 10–4962 (DSD/LIB), 2011 WL 6219641, at *7-8 (D. Minn. Nov. 29, 2011) ("A split of authority exists as to whether a RFC finding a claimant able to perform simple, repetitive tasks can support a conclusion by the VE that a claimant can

Even if the limitation to simple, 1-2 step instructions is consistent with a Reasoning Level of 3, other limitations imposed by the ALJ's RFC—occasional fine manipulation and occasional overhead reaching—appear to conflict with the fact that her past relevant work, as generally performed, requires frequent reaching and fingering. This **plus** the VE's testimony require that this Court remand this matter because the ALJ's finding that the plaintiff's "past relevant work as a retail sales clerk . . . does not require the performance of work-related activities precluded by [her] residual functional capacity" is not supported by substantial evidence.

> C. Further, the ALJ's "alternative"—fifth step—finding that, regardless whether the plaintiff can perform her past relevant work, there is substantial gainful employment that exists in the national economy that is consistent with the limitations imposed by her RFC, is not supported by <u>substantial evidence.</u>

In addition to finding that the plaintiff can perform her past relevant work,[9] the ALJ also found that the plaintiff "can perform work as a janitor of which there are 1.5

---

perform jobs requiring a Reasoning Level of 3.") (citing cases), *report & recommendation adopted*, 2011 WL 6218211 (D. Minn. Dec. 14, 2011), *with Thompson v. Astrue*, Civil Action No. 10–11742–JLT, 2012 WL 787367, at *10 (D. Mass. Feb. 17, 2012) ("although there is a split of authority on this issue, '[t]he majority of federal district courts, including a court in this district, have followed the Seventh and Eighth Circuits' in concluding that 'a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work.'") (quoting *Auger v. Astrue*, 792 F. Supp. 2d 92, 96-97 (D. Mass. 2011)), *report & recommendation adopted*, 2012 WL 787363 (D. Mass. Mar. 8, 2012).

[9] Where an "ALJ's step four determination constitutes error, it [may be] harmless error" if the "ALJ's alternative finding at step five" is correct. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (citing *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (error that is "inconsequential to the ultimate nondisability determination" is harmless error)); *see, e.g., Turner v. Astrue*, No. 8:08-cv-65-T-TBM, 2009 WL 804676, at *6-7 (M.D. Fla. Mar. 26, 2009) (where "[t]he ALJ decided the case at step four, and made an alternative step-five finding," the court found that ALJ erred, at step four, by both "finding that she had past relevant work as a

million in the national economy." (R. 19.) This conclusion was also based primarily on the testimony of the VE:

> Q. . . . [I]n this hypothetical, I'd like to remove the limitation that I have in the previous hypothetical that deals with the understanding, remember, and carrying out of simple or one, two-step instructions. So that you go simply with the RFC that's in exhibit 7F as I modify with the limitation to occasional fine manipulation, only occasional reaching with the right arm.
>
> A. Yes sir.
>
> Q. With the removal, would you be able to identify any jobs in the regional or national economy that are performed at the medium level? Or in the alternative, would the job of retail sales clerk then be doable under those circumstances?
>
> A. The retail sales clerk under those circumstances would be consistent -- the position of janitor at the medium level would be generally consistent, as it only requires occasional fingering. And that's DOT code 358.687-010. And that's medium and unskilled. Listed nationally is about a million five hundred thousand.
>
> Q. Would that job still be there if you had the limitation to understanding, remembering, and carrying out one and two step work?
>
> A. Yes sir, I think so.
>
> Q. Okay. Now, and in coming to that conclusion did you deviate in any way from the way it's described in the Dictionary of Occupational Titles?
>
> A. No sir.

(R. 44-45.)

---

childcare provider" and "concluding that Plaintiff could do past relevant work as a housekeeper and bakery cook as she performed both jobs, but he did **not** err by finding that she could perform those jobs as such are performed generally in the national economy[,]" at step five) (emphasis in original).

The plaintiff contends that the ALJ's finding that the plaintiff possesses "the residual functional capacity to perform the light to medium functions set forth in Exhibit 7F at 4-7, except for [certain additional limitations,]" is not consistent with the job of a "janitor" . . . at the medium level because the plaintiff's RFC limits her to lifting '40 lbs. occasionally and 60 lbs. never,'" while "a job of medium exertional capabilities require[s] lifting of up to 50 lbs. at a time." (Doc. 15 at 11.)

The only record evidence with regards to how much the plaintiff can lift and carry—adopted in the ALJ's RFC—is from Dr. Yager. (*See* R. 257 (as to both: 0 lbs. constantly; 25 lbs. frequently; 40 lbs. occasionally; and 60 lbs. never).) But "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). And the Eleventh Circuit has found that it is error for an ALJ to find that a plaintiff can return to her past relevant—medium— work where such work requires greater capabilities than those provided in the RFC. *See Dixon*, 312 Fed. App'x at 228 ("The RFC determination stated that Dixon could lift and carry 5 pounds constantly, 15 pounds frequently, and 25 pounds occasionally. But medium work, as defined by the regulations, involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds.") (citation omitted); *see also Pierce v. Asture*, No. C 10–2017(PSG), 2011 WL 3861889, at *3 (N.D. Cal. Aug. 31, 2011) (noting that the ability to lift only 20 pounds frequently and only 40 pounds occasionally is "insufficient for a residual functional capacity for medium work").

13

The capabilities set forth in the plaintiff's RFC are, admittedly, much closer to medium work, as defined in the regulations, than the capabilities at issue in *Dixon*. But this Court is also concerned with an additional inconsistency in the ALJ's decision, which provides that the plaintiff "can perform work as a janitor of which there are **1.5 million** in the national economy." (R. 19 (emphasis added).) The VE, however, identified the DOT code 358.687-010, which is for a particular type of janitor—a "change-house attendant" or "dry janitor." *See* DOT, Job Descriptions, *available at* http://www.occupationalinfo.org/35/358687010.html (last visited Apr. 5, 2011). First, it seems unlikely—and neither the ALJ nor the Commissioner have provided evidence to show—that there are 1.5 million "change-house attendants" in the national economy. Moreover, the DOT provides for several different "janitor" positions, and the requirements of some of those positions are not consistent with the plaintiff's RFC.[10]

It appears that the ALJ relied on the testimony of the VE and did not review the DOT to determine whether the VE's testimony was inconsistent with the DOT. As one district court in this Circuit has recently explained,

> [a] careful review of SSR 00-4p clearly shows that an ALJ's review of the DOT comes first, upon any suggestion by the VE that a job can be performed. Once the VE identifies any job, the ALJ must compare that job with the DOT requirements to determine if a conflict exists. Without an

---

[10] For example, a "janitor (any industry)," which is medium work, requires a GED reasoning level of 3 and a SVP of 3, but a "cleaner, industrial (any industry)," which is also medium work, requires a GED reasoning level of 2 and a SVP of 2. *See* Dictionary of Occupational Titles, Job Descriptions, *available at* http://www.occupationalinfo.org/38/382664010.html *and at* http://www.occupationalinfo.org/38/381687018.html (last visited Apr. 5, 2011).

> ALJ reviewing the actual DOT, an ALJ cannot know if there is a conflict between the DOT and the VE testimony when, if relying on the VE, the VE's testimony is wrong, fabricated, or contains omissions.

*Hall v. Astrue*, No. 2:09-cv-113-FtM-DNF, 2010 WL 5071003, at *9 (M.D. Fla. Dec. 7, 2010) (some alteration to original).

Of course, the ALJ asked the VE whether his testimony was consistent with the DOT (*see* R. at 45), and—*Hall* notwithstanding—"the law in the Eleventh Circuit is that the ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles." *Robinson v. Astrue*, Civil Action No. 2:10cv29–SRW, 2011 WL 2551284, at *9 (M.D. Ala. June 27, 2011) (citing *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999), which, although it predates SSR 00-4p, has recently been reaffirmed, *see, e.g., Hurtado v. Commissioner of Soc. Sec.*, 425 Fed. App'x 793, 796 (11th Cir. Apr. 25, 2011) (per curiam)).[11] Here, however, the VE's response is internally inconsistent, and the ALJ may have misapplied that response in his decision. The VE identified a particular type of janitor position—a "dry janitor"—that, based on the DOT, is consistent with the plaintiff's RFC. **But** the VE described this position as simply a janitor, generally, and stated that 1.5 million such positions were available in the national economy. The ALJ

---

[11] Further, in *Jones v. Commissioner of Social Security*, 423 Fed. App'x 936 (11th Cir. Apr. 19, 2011) (per curiam), a panel of the Eleventh Circuit noted that

> [t]o the extent SSR 00–4p conflicts with *Jones*, we are bound by *Jones*. Furthermore, the ALJ arguably discharged his duty under SSR 00–04p by asking the VE about inconsistencies with the DOT, and then noting in his decision that the VE had explained that over half the cashier positions the DOT classified as light work were actually sedentary work.

*Id.* at 939 n.4.

then incorporated this general finding into his decision, leaving the Court to question both which janitor positions were found to be consistent with the plaintiff's RFC and whether a substantial number of those positions exists in the national economy. *See Vanhorn v. Commissioner of Soc. Sec.*, Civil Action No. 09-CV-14940, 2011 WL 70605, at *4 & n.4 (E.D. Mich. Jan. 7, 2011) (finding error where the VE identified the position of "information clerk" generally—where several such positions, with divergent strength ratings and SVP times, exist in the DOT—and failed to "explain the precise tasks an 'information clerk' job entails . . . and whether a person with plaintiff's symptoms can do such work. . . . On remand, if the VE identifies 'information clerk' jobs in response to the ALJ's hypothetical question(s), she must clearly indicate which information clerk jobs she means, along with the exertional level involved, the amount of training required, and the extent to which plaintiff's CTS symptoms, as found by the ALJ, may interfere with the performance of such work.") (rejecting report and recommendation of the Magistrate Judge that the Commissioner's motion to affirm the ALJ be granted).

Given these questions, which the Court is not in a position to answer, *see Dixon*, 312 Fed. App'x at 229 (since "we may not make factual determinations, we remand for the ALJ to determine whether alternative jobs exist in the national economy that Dixon could perform"), the Court cannot say that the ALJ's alternative, step five, determination—where the burden is his to show that the plaintiff is capable of engaging in another kind of substantial gainful employment that exists in the national economy, *see Sryock*, 764 F.2d at 836—is supported by substantial evidence.

**Conclusion**

Because the Court finds that neither the ALJ's determination at step four nor his alternative determination at step five are supported by substantial evidence, it is **ORDERED** that the decision of the Commissioner of Social Security denying the claimant benefits be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the 10th day of April, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**